899 F.2d 1221
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert Earl FLEENOR, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 89-5642.
 United States Court of Appeals, Sixth Circuit.
 April 11, 1990.
 
 Before CORNELIA, G. KENNEDY and RALPH B. GUY, Jr., Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The issue in this Social Security appeal relates to the onset date of the Plaintiff's mental impairment, which the Secretary now acknowledges to be severe and disabling. The Plaintiff's insured status expired on September 30, 1981, and the question is whether substantial evidence supports the Secretary's determination that the Plaintiff did not suffer a disabling psychiatric impairment on or before that date.
 
 
 2
 The Plaintiff worked as a coal miner from 1968 until March 8, 1976, when he suffered a back injury. He attempted to return to work in 1982 and was hired as a loader operator inside a mine, but was unable to pass the physical examination. He claims total disability from 1976 by reason of his back condition and a nervous condition. In a previous application for disability benefits, however, he was determined not to have been disabled on December 29, 1977, and he did not appeal that ruling. Accordingly, in order to be entitled to benefits, Fleenor must establish disability within the meaning of the Social Security Act between December 29, 1977, and September 30, 1981.
 
 
 3
 Fleenor underwent surgery for a herniated disc following a positive myelogram in June 1983. An orthopedic surgeon found low post-operative motivation and suspected that psychological factors played a role in the plaintiff's complaints of continuing difficulty following surgery. At a hearing before an administrative law judge (ALJ), Fleenor testified that problems related to his back condition actually worsened following the operation and that he was considering whether to undergo a second surgical procedure on his back. The ALJ issued a decision on November 21, 1984, in which he found that Fleenor currently had a severe psychiatric impairment with evidence of severe personality disorder and psychotic behavior but that these conditions were not severe impairments prior to September 1981. The ALJ concluded that Fleenor retained the residual functional capacity to perform a full range of light work. Fleenor appealed this decision and the district court remanded the case for further administrative action under revised rules for determining disability due to mental disorders. The Appeals Council referred the case to the same ALJ who had conducted the hearing and issued the first decision denying benefits. The ALJ did not hold a new evidentiary hearing, but rendered a decision on the record of the first hearing plus additional documents filed by Fleenor, applying the revised rules with respect to mental disorders.
 
 
 4
 A newly-filed medical report from Dr. Robert P. Granacher, Jr., a forensic psychiatrist, became the focal point of the ALJ's second decision, which was rendered on June 3, 1986. The ALJ found that Dr. Granacher speculated as to Fleenor's mental condition prior to September 1981 but did not provide any objective medical findings and that it was duplicative of previously considered medical evidence. Thus, the ALJ rejected Dr. Granacher's conclusion that Fleenor was disabled prior to September 30, 1981. The ALJ referred to a psychiatric evaluation in 1978 that showed Fleenor was functioning with normal intelligence and while experiencing mild anxiety was considered to have no psychiatric impairment. By 1984 Fleenor was manifesting a severe and possibly disabling psychiatric impairment and had registered a significant drop in IQ scores. The ALJ acknowledged that the psychiatric impairment had become progressively worse but found that there was no evidence that it was significantly worse as of September 30, 1981, than when the evaluation was made in 1978. The Plaintiff's attorney took Dr. Granacher's deposition on June 9, 1986.
 
 
 5
 The Appeals Council rendered a decision on September 10, 1986, upholding the ALJ's recommended decision. In its decision the Appeals Council discussed the medical evidence, including Dr. Granacher's deposition, and concluded that a mild chronic anxiety neurosis first noted in October 1977 had significantly worsened but that this worsening was first detected in February 1983, well after the last insured date. The Appeals Council concluded that only some of the symptoms listed as "A criteria" under Section 12.04 existed between March 8, 1976, and September 30, 1981, and that there was no showing that Fleenor's psychiatric impairment met or equalled the listing of diagnostic criteria prior to September 30, 1981. Accordingly, the Appeals Council found that Fleenor's mental impairment did not prevent him from performing light work prior to September 30, 1981, as it did not reach a disabling level of severity until Fleenor was seen on February 22, 1983.
 
 
 6
 The plaintiff again appealed to the district court. The district court reviewed the medical evidence indicating that Fleenor's IQ dropped significantly between 1977 and 1984 and that treating doctors had commented on the possibility of psychological overlay to his orthopedic problems in 1984. The district court also noted that later in 1984 a psychological workup indicated, in addition to the lower IQ scores, "extreme difficulty following instructions" and that a psychiatric examination in August 1984 showed low intellectual ability, probable chronic brain syndrome, several severe personality disorders and possible schizophrenia. The district court also considered the reports and deposition of Dr. Granacher. In his deposition Dr. Granacher stated that on the basis of a review of all of the medical record, including the 1977 and 1984 psychological evaluations, and discussions with Fleenor's wife, Fleenor was suffering from what appeared to be progressive dementia and that this condition was disabling. Dr. Granacher related his disability back to the period between 1977 and 1981. The district court observed that Dr. Granacher was of the opinion that the significant disability found in 1984 could not possibly have developed since September 30, 1981. The district judge reversed the administrative decision and remanded to the Secretary for a review under the fourth and subsequent steps of the sequential evaluation of impairment claims stating, "it appears that the Secretary improperly failed to consider the existence of a severe psychiatric impairment which was established to exist before September 1981."
 
 
 7
 Following remand, the Secretary again referred the matter to the same ALJ. The ALJ conducted a hearing at which a vocational expert testified. The ALJ did not bring to the hearing a medical advisor to evaluate Dr. Granacher's medical report and deposition. The vocational expert testified that Fleenor could do light work prior to September 30, 1981, if it was not assumed that his mental impairment went beyond mild anxiety neurosis. He testified in response to another question, however, that if Dr. Granacher's opinion as to the onset of Fleenor's severe psychiatric impairment were accepted there would be no work that Fleenor could do in the national economy at any time after his impairment reached that level.
 
 
 8
 The ALJ rejected Dr. Granacher's opinion as to the onset of Fleenor's severe and disabling mental impairment as "preposterous and incredible." Throughout his opinion he evidenced disagreement both with the Appeals Council's determination that Fleenor suffered from a disabling mental impairment at the time of the first hearing before the ALJ and with the district court's determination that a reevaluation must be made in light of Dr. Granacher's uncontradicted opinion as to the onset date. The ALJ stated that the existence of Fleenor's severe mental impairment (he placed quotation marks around the word severe) rested entirely on the credibility of Granacher's testimony and that he discredited it totally.
 
 
 9
 While it is true that Dr. Granacher's treatment of the drop in Fleenor's IQ might be viewed as inconsistent, nevertheless he did not base his conclusion about the onset date entirely on this change. He also relied on two interviews with Fleenor, certain testing he had administered, and the fact that dementia is a progressive disease involving the loss of intellectual function. He made it clear that he had learned from Fleenor's wife of attitudes and actions by the claimant long before September 30, 1981, that indicated the onset of disabling dementia. It goes without saying that a doctor is not required to rely solely on the testimony of the patient himself concerning such conditions in view of the fact that the patient's memory and mental processes have been found to be impaired.
 
 
 10
 The district court, with a different judge presiding, affirmed the decision of the ALJ after it had been accepted by the Appeals Council. The Appeals Council appeared to base its decision upon a finding that Fleenor suffered from a severe mental impairment prior to the last insured date but that he retained the ability to perform the mental demands of light work. The Appeals Council then adopted the vocational experts' testimony as to the existence of numerous jobs involving light work that Fleenor could perform.
 
 
 11
 Fleenor has appealed again and we reverse the judgment of the district court with directions that the case be remanded to the Secretary for further proceedings before a different ALJ. In Blankenship v. Bowen, 874 F.2d 1116 (6th Cir.1989), we held, relying on Social Security Rule 83-20, that it is not necessary for an impairment to have reached the listing severity before onset of disability can be established. This is especially true when dealing with a slowly progressive impairment, such as Fleenor's condition has been described in this case. Id. at 1122. In Blankenship there was no medical evidence that contradicted a qualified doctor's testimony as to the onset of a disabling impairment. In Blankenship we remanded the case to obtain such additional evidence regarding the progression of the claimant's impairment as might be obtainable and to call on the services of a medical advisor in determining the disability onset date. The same procedure must be followed in this case where Dr. Granacher's testimony was the only medical opinion respecting the onset date of the plaintiff's severe and disabling mental impairment and the ALJ rejected that testimony because he found it "preposterous and incredible." After all, it was this same testimony that led the first district judge to reverse the decision of no disability and remand for further investigation respecting the onset date of Fleenor's admittedly disabling mental impairment.
 
 
 12
 Remanded for further proceedings as indicated herein.